UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE AMERICAN HOSPITAL ASSOCIATION, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>SYLVIA MATTHEWS BURWELL, in her official capacity as Secretary of Health and Human Services,<br><br>      Defendant. | Civil Action No. 12-1770 (CKK) |

**MEMORANDUM OPINION**
(September 17, 2014)

Plaintiffs, the American Hospital Association, Missouri Baptist Sullivan Hospital, Munson Medical Center, Lancaster General Hospital, Trinity Health Corporation, and Dignity Health (collectively, "Plaintiffs"), bring this action against Defendant Sylvia Matthews Burwell, in her official capacity as Secretary of Health and Human Services,[1] asserting claims that Defendant's purported policy applying time limits to the billing of certain Medicare claims is arbitrary and capricious in violation of the Administrative Procedure Act; that defendant is equitably estopped from applying the timely filing limit to certain new Medicare Part B claims; and that the Medicare Act's one-year time limit is equitably tolled. Plaintiffs seek both declaratory and injunctive relief. Presently before the Court is Defendant's [31] Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim upon which Relief can be Granted.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Sylvia Matthews Burwell has been automatically substituted for Kathleen Sebelius, whom the parties' pleadings name as Defendant.

1

Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court GRANTS Defendant's motion with respect to the lack of jurisdiction. Accordingly, this action is DISMISSED in its entirety.

## I. BACKGROUND

### A. Factual Background

When patients are admitted to a hospital, they are treated on an inpatient basis; when patients are treated without being admitted, they are treated on an outpatient basis. Second Am. Compl. ¶ 1. Upon the submission of claims to the Secretary of Health and Human Services, *see* 42 U.S.C. §§ 1395f(a)(1), 1395n(a)(1), Medicare Part A provides reimbursement for inpatient care of patients, and Medicare Part B provides reimbursement for outpatient services. Second Am. Compl. ¶¶ 3, 4. Claims for reimbursement must be submitted "no later than the close of the period ending 1 calendar year after the date of service." 42 U.S.C. §§ 1395n(a)(1); *see also* 1395f(a)(1). The Medicare Act charges the Secretary with "prescrib[ing] such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter." 42 U.S.C. § 1395hh(a)(1).

---

[2] Compl., ECF No. [1] ("Compl."); Amended Compl., ECF No. [14] ("First Am. Compl."); Second Amended Compl., ECF No. [26] ("Second Am. Compl."); Def.'s Mot. to Dismiss for Lack of Jurisdiction and Failure to State a Claim upon which Relief can be Granted, ECF. No. [31] ("Def.'s Mot."); Plaintiffs' Opp'n to Def.'s Mot. to Dismiss, ECF No. [32] ("Pl. Opp'n"); Amicus Brief by Healthcare Assoc. of New York, ECF No. [35]; Defendant's Reply to Opp'n to Def.'s Mot. to Dismiss and Response to Amicus Brief, ECF No. [37] ("Def.'s Reply"); Pls.' Supp. Br. Regarding Effect of Final CMS Rule on Def.'s Mot. to Dismiss, ECF No. [47] ("Pls.' Supp. Br."); Def.'s Supp. Br. on the Effect of the Final Rule on Def.'s Mot. to Dismiss, ECF No. [48] ("Def.'s Supp. Br."); Pls.' Supp. Br., ECF No. [51] ("Pls.' Second Supp. Br."); and Def.'s Reply to Pls.' Supp. Br., ECF No. [53] ("Def.'s Second Reply").

In an exercise of its discretion, the Court finds that holding oral argument on the instant motion and petition would not be of assistance in rendering a decision. *See* LCvR 7(f).

As a means of correcting fraudulent billing, the Secretary of Health and Human Services, operating through the Centers for Medicare and Medicaid Services (CMS), employs private third parties, known as Recovery Audit Contractors (RACs), to review billing decisions. Second Am. Compl. ¶ 2. When a RAC determines that a particular patient should not have been admitted to a hospital to receive inpatient care, it will "claw back" the payments made to the hospital. *Id*. Decisions by RACs are subject to multiple layers of administrative review: a provider can ask for a determination of a RAC's findings by a Medicare Administrative Processor (MAC); can then seek reconsideration from a Qualified Independent Contractor (QIC), including an independent record review by a panel of healthcare professionals; can receive review of the QIC action by an Administrative Law Judge (ALJ); and can finally appeal the ALJ decision to the Departmental Appeals Board Medicare Appeals Council (DAB). *Id*. ¶ 50. "A decision of the Departmental Appeals Board constitutes a final agency action and is subject to judicial review." 42 U.S.C. § 1395ff(f)(2)(A)(iv).

Plaintiffs allege that, prior to March, 2013, CMS had indicated that Part B compensation *was not* available for services provided on an inpatient basis where a RAC had clawed back Part A reimbursement because inpatient treatment was not appropriate, except for certain ancillary services. Second Am. Compl. ¶¶ 46–48. At the times relevant to the claims in this action, the Medicare Benefits Policy Manual stated, in Chapter 6, § 10, "Payment may be made under Part B for . . . medical and other health services listed below when furnished by a participating hospital (either directly or under arrangements) to an inpatient of the hospital, but only if payment for these services cannot be made under Part A." *Id*. ¶ 48. The services "listed below" were limited to ancillary services like diagnostic tests, surgical dressings, splints and casts, outpatient physical therapy, and vaccines. *Id*.

3

Some hospitals appealed their Part A denials, and, in at least 16 cases between 2005 and 2012, the DAB concluded that a Part B payment was available to hospitals that provided reasonably and medically necessary services on an inpatient basis when the patient could have been treated in an outpatient setting.[3] *Id.* ¶ 51. But many more hospitals did not seek Part B payment after a Part A denial. *Id.* ¶ 53. Plaintiffs are in the latter category. Plaintiffs are the American Hospital Association, a national organization representing and serving hospitals and healthcare systems and networks, as well as individual members; three individual hospitals; and two health care systems. *Id.* ¶¶ 14–19. Plaintiffs—and their constituent hospitals—were subject to Part A claw backs because of RAC determinations that the services should have been provided as outpatient care rather than inpatient care.[4] *Id.* ¶¶ 69, 80, 93, 104, 117, 128–130. Only after filing this action did Plaintiffs begin to seek Part B payment for services denied Part A reimbursement. *See* Pls.' Second Supp. at 4–10. Among these claims, some were granted, some were denied, and others are still pending. *See id.*

**B. Procedural History**

On November 1, 2012, Plaintiffs filed suit in this Court, challenging CMS's purported "Payment Denial Policy." *See* Second Am. Comp. ¶ 7; *see generally* Compl. One month later, on December 13, 2012, Plaintiffs filed their First Amended Complaint. *See* First Am. Compl. On March 13, 2013, CMS issued an interim policy to handle rebilling after Part A denials, CMS Ruling 1455-R, and issued a proposed rule to address such claims on a permanent basis. Second

---

[3] Plaintiffs are unaware of any DAB decisions with the reverse outcome. *Id.* ¶ 51.
[4] Pursuant to CMS Ruling 1455-R, issued on March 13, 2013, hospitals could receive rebilling under Part B for services denied Part A reimbursement within a limited window of time, even if the Part B claim was filed more than one-calendar year after the date of services. Second Am. Compl. ¶¶ 56, 59. Plaintiffs were able to seek rebilling on claims subject to Ruling 1455-R. *Id.* ¶¶ 71, 82, 105; 120, 131. But Ruling 1455-R was not applicable to the claims that are the subject of this action. *See id.* ¶¶ 72, 83, 95, 105, 120, 131; Pls.' Supp. Br. at 1.

Am. Compl. ¶ 56; *see also* Medicare Program; Part B Inpatient Billing in Hospitals, 78 Fed. Reg. 16,632 (Mar. 18, 2013). Given the issuance of the proposed rule and the interim ruling by CMS, the Court granted the parties' Joint Motion to Amend the Schedule in Light of Recent Ruling by the Administrator of the Centers for Medicare and Medicaid Services. Plaintiffs filed a Second Amended Complaint on April 19, 2013. *See* Second Am. Compl. In response, on June 6, 2013, Defendant filed the motion to dismiss presently before the Court. *See* Def.'s Motion to Dismiss. On August 19, 2013, CMS issued a final rule, Medicare Program; Payment Policies Related to Patient Status, which supplanted Ruling 1455-R. 78 Fed. Reg. 50,496, 50,906 (Aug. 19, 2013).

At the Court's request, Plaintiffs and Defendant filed supplemental briefing, on October 28, 2013, on the effect of the Final Rule on these proceedings. *See* Pls.' Supp. Br.; Def.'s Supp. Br. To respond to additional questions from the Court regarding the potential mootness of Plaintiffs' claims and regarding the status of Plaintiffs' claims for payment, Plaintiffs filed supplemental briefing yet again on March 7, 2014, and Defendant filed a reply on March 21, 2014. *See* Pls.' Second Supp. Br.; Def.'s Second Reply. In light of the issuance of the Final Rule, Plaintiffs clarified that they are "challeng[ing] a policy—CMS's application of a time limit to rebill for Medicare Part B payment after a RAC denial—that CMS itself agrees was in place since before interim Ruling 1455-R, and remains in place after the final rule." Pls.' Second Supp. Br. at 1. Plaintiffs specified "the broader challenges" in this action: "First, it is arbitrary to make hospitals submit 'new' Part B claims when they could instead amend or supplement their existing claims. Second, it is arbitrary to apply a waivable time limit to a circumstance where the agency knows the requirement cannot be met." *Id*. at 3 (citations omitted). Finally, given that Count VI of Plaintiffs' Second Amended Complaint was based on Ruling 1455-R, Plaintiffs agreed to dismiss Count VI. *See* Pls.' Second Supp. Br. at 3 n.1.

5

## II. LEGAL STANDARD

Defendant moves to dismiss Plaintiffs' actions pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing the Court lacks subject matter jurisdiction because none of the jurisdictional provisions on which Plaintiffs rely support jurisdiction in these circumstances.[5] *See* Def.'s Mot. at 16–20, 24–30; Def.'s Supp. Br. at 2-3; *see generally* Def.'s Second Reply. "Federal courts are courts of limited jurisdiction" and can adjudicate only those cases entrusted to them by the Constitution or an Act of Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court begins with the presumption that it does not have subject matter jurisdiction over a case. *Id*. To survive a motion to dismiss pursuant to Rule 12(b)(1), a plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).

## III. DISCUSSION

Plaintiffs argue that this Court has jurisdiction over this action by virtue of 42 U.S.C. § 405(g), the jurisdictional provision of the Medicare Act. In the alternative, Plaintiffs argue that there is federal question jurisdiction under 28 U.S.C. § 1331, notwithstanding the bar against federal question jurisdiction by 42 U.S.C. § 405(h) to "all claims that have their 'standing and

---

[5] Defendant also moved to dismiss Counts IV and V of Plaintiffs' complaint on the grounds that Plaintiffs failed to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mot. at 30–31. Because there is no jurisdiction for the claims pleaded by Plaintiffs in the first instance, the Court does not reach these alternative arguments for dismissal.

substantive basis' in the Medicare Act." *Am. Chiropractic Ass'n, Inc. v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005) (citation omitted). As explained below, neither statutory provision supports jurisdiction in this action.[6]

## A. Jurisdiction under the Medicare Act

Plaintiffs argue that there is jurisdiction to consider their claims under the Medicare Act. Second Am. Compl. ¶ 22. Defendant responds that there is no jurisdiction under the statute for the particular claims that Plaintiffs bring. Def.'s Mot. at 24–30; Def.'s Second Reply at 1–3. Section 42 U.S.C. § 1395ff(b)(1)(A) of the Medicare Act incorporates the judicial review provisions of 42 U.S.C. § 405(g) of the Social Security Act. Section 405(g) provides, in relevant part:

> Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow.

---

[6] Plaintiffs previously offered two additional statutory bases for this Court's jurisdiction: the Administration Procedure Act, 5 U.S.C. § 706(2), and mandamus jurisdiction under 28 U.S.C. § 1361. *See* Second Am. Compl. ¶ 23–24. However, Plaintiffs did not respond to Defendant's arguments regarding these bases. *See* Def.'s Mot. at 28–30; Pls.' Opp'n. Accordingly, these arguments are dismissed as conceded. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.")) The Court notes, as well, that Plaintiffs did not rely on these bases in any of the supplementary briefing. *See* Pls.' Supp. Br.; Pls.' Second Supp. Br. Moreover, even if the Court were to consider Plaintiffs' arguments with respect to these two bases, they would not support jurisdiction. The judicial review provision of the Administrative Procedure Act, 5 U.S.C. § 706, "is not an independent grant of subject matter jurisdiction." *Your Home Visiting Nurse Service, Inc. v. Shalala*, 525 U.S. 449, 457–58 (1999) (citations omitted). Likewise, the mandamus statute "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Plaintiffs' pleadings do not satisfy these "strict requirements for mandamus relief." *Ass'n of Flight Attendants-CWA v. Chao*, 493 F.3d 155, 160 (D.C. Cir. 2007).

7

"The term 'final decision' is not only left undefined by the Act, but its meaning is left to the Secretary to flesh out by regulation." *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975). *See* 42 U.S.C. § 405(a) ("The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions . . . "). Only certain decisions with respect to Medicare claims are appealable. *Compare* 42 C.F.R. § 405.904 (initial determinations of benefits are appealable), *with* 42 C.F.R. §§ 405.980(a)(5), 405.926(l) (decisions whether to "reopen" claims are not appealable). *Accord Palomar Med. Ctr. v. Sebelius*, 693 F.3d 1151, 1160 (9th Cir. 2012).

Plaintiffs claim they are challenging a "systemwide CMS policy of general applicability." Pls.' Opp'n at 30. In Plaintiffs' view, this general policy consists of two pillars: the requirement that Part B claims stemming from related Part A denials must be filed as new claims, and the insistence that the new claims meet the timely filing requirements of the statute, requiring filing within one year of the provision of the medical services. Pls.' Second Supp. Br. at 3. But because they cannot point to a moment in which these policies came into being, or trace them to any decision by CMS, they immediately run into an insurmountable barrier. Judicial review under the Medicare Act is limited to "any final decision . . . made after a hearing." 42 U.S.C. § 405(g). Even insofar as this two-part policy exists, it does not embody any such final decision.

With respect to the time limit aspect of the purported policy, the essence of Plaintiffs' argument is that CMS refuses to create an additional exception to the deadlines for filing of new claims, which are set out by statute. The Medicare Act requires filing of claims "no later than the period ending 1 calendar year after the date of service," 42 U.S.C. § 1395u(b)(3), but "the Secretary may specify exceptions to the 1 calendar year period specified in such paragraph,"

8

42 U.S.C. § 1395n(a)(1). Pursuant to the Secretary's regulatory authority, CMS regulations reiterate the time limit set by statute and then enumerate several exclusive categories of exceptions from and extensions to the time limits. *See* 42 C.F.R. § 424.44(b)(1)-(5). Plaintiffs do not argue that these specific enumerated exceptions apply to them; nor do they purport to challenge these particular regulations.[7] *See* Pls.' Second Supp. Br. at 1-4; Second Am. Compl. Instead Plaintiffs argue that it is arbitrary and capricious, and thus unlawful, for CMS to refuse to create an additional categorical exception for those claimants that, like them, seek to file a Part B claim after a Part A denial. *See* Pls.' Second Supp. Br. at 3. Because the enumerated exceptions are exclusive, *see* 42 C.F.R. § 424.44(a), Plaintiffs effectively argue that it is unlawful for CMS to refuse to promulgate a regulation creating an additional exception.

However, CMS's non-exercise of the agency's discretion to create an additional category of exceptions does not constitute a "final decision . . . after a hearing," as it must in order to justify the Court's jurisdiction. *See* 42 U.S.C. § 405(g). The Court would not necessarily even need to consult the agency's regulations in order to determine that this non-exercise of discretion is not, in fact, a decision, let alone a final decision after a hearing. Plaintiffs do not—and it appears that they cannot—point to the actual decision introducing the policy that they claim to be challenging. Furthermore, the term "final decision" is limited to those categories of decisions denominated as such by the Secretary. *See Salfi*, 422 U.S. at 766. The refusal to create an additional category of exceptions by regulation is not one of these categories and is thus not subject to appeal under the Medicare Act.[8] *See* 42 C.F.R. § 405.

---

[7] Notably, Plaintiffs do not purport to challenge any of the regulations regarding rebilling in this action. *See* Second Am. Compl. ¶¶ 138, 140, 141; Def.'s Second Supp. Br. at 3.

[8] CMS twice refused suggestions to amend their regulations to include the exception to the timeliness requirements that Plaintiffs seek. In a rule issued November 29, 2010, CMS decided not to accede to commenters' request to create an "exception to the timely filing rules so

9

Plaintiffs' attack on the requirement that health care providers file new Part B claims with respect to inpatient services denied payment under Part A—the second pillar of the purported general policy that Plaintiffs challenge—falls victim to a similar analysis. Plaintiffs argue that they should be able to adjust existing Part A claims to meet the criteria of Part B and that such adjustment would not require the reopening of those claims. *See* Pls.' Opp'n at 4; Pls.' Supp. Br. at 6–7. Plaintiffs locate CMS's failure to allow them to do so in a generalized policy and do not point to any specific action that Defendant took that introduced such a policy. *See* Second Am. Comp. ¶¶ 148–153; *see generally* Pls.' Second Supp. Br. Defendant responds that the purported policy is nothing more than the agency's implementation of its regulations and, in turn, the statute. *See* Def.'s Second Reply at 3. Indeed, the regulations support Defendant's response that adjustment in such circumstances is not possible without reopening the claims. *See* 42 C.F.R. § 405.928 ("[a]n initial determination . . . is binding unless it is revised or reconsidered . . . or revised as a result of reopening"); 42 C.F.R. § 405.980(a)(1) ("A reopening is a remedial action taken to change a binding determination or decision . . . , even though the binding determination or decision may have been correct at the time it was made based on the evidence of record."). Once again, Plaintiffs do not challenge the underlying regulations. Even if the language of these regulations were not clear, the Court would be bound to defer to CMS's interpretation of its own regulation, which is "controlling unless plainly erroneous or inconsistent with the regulation."

---

that hospitals are permitted to file inpatient Part B only claims for any inpatient cases that are . . . determined not to be medically necessary in an inpatient setting." Medicare Program; Payment Policies Under the Physician Fee Schedule and Other Revisions to Part B for CY 2011, 75 Fed. Reg. 73,169, 73,449 (Nov. 29, 2010). CMS reiterated this conclusion in the Final Rule that followed the initiation of this action. *See* Medicare Program; Payment Policies Related to Patient Status, 78 Fed. Reg. 50,496, 50,922 (Aug. 19, 2013). Plaintiffs do not purport to challenge these rulemakings in this action. *See* Second Am. Compl.; Pls.' Second Supp. Br. But the Court notes that one of the Plaintiffs, the American Hospital Association, has challenged the 2013 Final Rule in a separate action, which is currently pending. *See* Compl. at 1, *American Hospital Association v. Sebelius* (No. 14-cv-609).

*Auer v. Robbins*, 519 U.S. 452, 461 (1997). CMS's interpretation has no such flaw. As Plaintiffs do not point to any decision—outside of these regulations—that spawned the purported policy, Plaintiffs' challenge fails to satisfy the requirements of § 405(g), limiting judicial review to "final decision[s] . . . after a hearing." This non-existent decision is not one of the categories of final decisions of which judicial review is allowed, *see Salfi*, 422 U.S. at 766; 42 C.F.R. § 405.

Even if the Court ignored Plaintiffs' explanation that they are challenging a general policy rather than particular claim decisions, their arguments for jurisdiction are unavailing. Plaintiffs object to CMS's refusal to adjust and supplement existing claims, *see* Pls.' Supp. at 6; and object to the agency's insistence on applying a one-year time limit to the filing of new claims, *see id*. at 9. Each of these theories fails because of the limitation of jurisdiction by § 405(g) to review of "final decision[s] . . . made after a hearing." As explained above, Plaintiffs' suggestion that they should be able to adjust and supplement their original claims without reopening fails. *See* 42 C.F.R. § 405.928; 42 C.F.R. § 405.980(a)(1). Decisions not to reopen are "not initial determinations and are not appealable." 42 C.F.R. § 405.926(l). *See Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 454 (1999); *Palomar Med. Ctr. v. Sebelius*, 693 F.3d 1151, 1165–67 (9th Cir. 2012). Similarly, the decision that a claim is not timely filed is not appealable. 42 C.F.R. § 405.926(n).

Finally, Defendant additionally argues that jurisdiction fails under § 405(g) because Plaintiffs failed to exhaust administrative remedies. Def.'s Mot. at 17–19. The Court notes that Plaintiffs report that they continue to pursue their administrative remedies as to the rebilling of previously denied Part A claims. *See* Pls.' Second Supp. Br. at 4–10. While Plaintiffs continue to argue that exhaustion is futile, Defendant responds that Plaintiffs' reported success on some of their rebilling claims, *see, e.g.*, *id*. at 6, eviscerates the futility argument. However, the Court

need not resolve this dispute because the statute does not support jurisdiction over these claims in the first instance.[9]

## B. Federal Question Jurisdiction

In Plaintiffs' Opposition to Defendant's Motion to Dismiss, Plaintiffs raised an additional ground for jurisdiction: general federal question jurisdiction under 28 U.S.C. § 1331. This basis did not appear in Plaintiffs' complaint (originally or as amended). In a footnote in their opposition, Plaintiffs requested leave to amend their complaint to assert this basis for jurisdiction. Pls.' Opp'n at 37 n.9. But couching a motion to amend in a footnote in an opposition to a motion to dismiss is procedurally improper. *See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation marks omitted). Nonetheless, because of the "strong presumption that Congress intends judicial review of administrative action," *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670 (1986), and because Defendant has responded to this argument in subsequent briefing, the Court exercises its discretion to review this argument. But considering this argument does not lead to Plaintiffs' desired result: even if this basis for jurisdiction had been properly pleaded, it does not support the Court's jurisdiction in this action.

"No action against the United States, the [Secretary of Health and Human Services], or any officer or employee thereof shall be brought under [28 U.S.C. §] 1331 . . . to recover on any claim arising under" the Medicare Act. 42 U.S.C. § 405(h); *see* 42 U.S.C. § 1395ii (incorporating

---

[9] Thus, Plaintiffs' citations to *Tataranowicz v. Sullivan*, 959 F.2d 268 (D.C. Cir. 1992), are inapposite. In *Tataranowicz*, the D.C. Circuit reached the merits of a question of statutory interpretation upon determining that exhaustion was futile and upon "finding that dispensing with further administrative process is consistent with the purposes of exhaustion." *Id.* at 275.

§ 405(h) into the Medicare Act). Judicial review under § 405(g) is available "only after the claim has been presented to the Secretary and administrative remedies have been exhausted." *Am. Chiropractic Ass'n, Inc.*, 431 F.3d at 816. Section 405(h) is a broad jurisdictional bar, eliminating general federal question jurisdiction wherever " 'both the standing and the substantive basis for the presentation' of a claim is the Medicare Act." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 12 (2000) (quoting *Salfi*, 422 U.S. at 760–61). However, there is an exception to this broad bar "if the claimant can obtain judicial review only in a federal question suit." *Am. Chiropractic Assn, Inc.*, 431 F.3d at 816 (citing *Illinois Council*, 529 U.S. at 10–13). The *Illinois Council* exception "applies not only when administrative regulations foreclose judicial review, but also when roadblocks practically cut off any avenue to federal court. As to the latter, it is not enough that claimants would encounter potentially isolated instances of the inconveniences sometimes associated with the postponement of judicial review, or that their claims might not receive adequate administrative attention. The difficulties must be severe enough to render judicial review unavailable as a practical matter." *Id.* (citations and quotation marks omitted). Indeed, "the *Illinois Council* exception is not intended to allow section 1331 federal question jurisdiction in every case where section 405(h) would prevent a particular individual or entity from seeking judicial review." *Council for Urological Interests v. Sebelius*, 668 F.3d 704, 711 (D.C. Cir. 2011),

While framed as a challenge to a general policy, fundamentally, Plaintiffs' argument is that they should be allowed to recoup payments for Part A claims that were previously clawed back because of a determination that the services should have been provided in an outpatient, rather than inpatient, setting. Plaintiffs could have raised these arguments following a "final decision" after "hearing," when their Part A claims were denied. Plaintiffs argue that doing so

13

appeared futile since they were informed by CMS that they could not seek Part B repayment for their denied Part A claims. *See* Pls.' Supp. at 9. But the "uniform line of cases" in which the Departmental Appeals Board held that Part B rebilling was available, Second Am. Compl. ¶ 51, belies this claim. Given that others successfully challenged the refusal to rebill under Part B, it was not impossible for Plaintiffs to obtain similar review. More broadly, if Plaintiffs had timely appealed the agency's decisions with respect to rebilling, regardless of whether those administrative decisions were in their favor, they could have obtained judicial review in this Court. *See Illinois Council*, 529 U.S. at 23 (Plaintiffs "remain free, however, after following the special review route that the statutes prescribe, to contest in court the lawfulness of any regulation or statute upon which an agency determination depends. . . . After the action has been so channeled, the court will consider the contention when it later reviews the action. And a court reviewing an agency determination under § 405(g) has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide").

That Plaintiffs did not raise these claims at the appropriate time through Medicare Act channels does not make § 1331 available to do so now. For the purposes of the *Illinois Council* analysis, it does not matter whether this challenge is framed as one to a general policy or one to specific payment decisions. To allow Plaintiffs access to the courts through § 1331 because they cloaked their Medicare Act challenge in the garb of a challenge to a general policy would subvert the channeling function of 405(h) in the first instance. *See Illinois Council*, 529 U.S. at 13 (2000) ("insofar as [§ 405(h)] demands the 'channeling' of virtually all legal attacks through the agency, it assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying 'ripeness' and 'exhaustion' exceptions case by case").

Moreover, the *Illinois Council* exception is an ill fit for the circumstances facing the Court. Here, current regulations explicitly foreclose the outcome Plaintiffs seek, *see* 42 C.F.R. § 424.44(b), but yet Plaintiffs do not challenge those regulations or the agency's interpretation of those regulations. Insofar as Plaintiffs challenge a policy ungrounded in any specified decision, the Court seriously doubts that it could be considered the sort of "final agency action" necessary to state a cause of action under the Administrative Procedure Act, *see Bennett v. Spear*, 520 U.S. 151, 177–78 (1997), without which jurisdiction under § 1331 would be futile. Although the Court is foreclosed from reaching the merits of this claim because of the absence of jurisdiction,[10] the fact that the purported policy would likely be unreviewable in any event confirms the conclusion that this is not the sort of case encompassed by *Illinois Council*. *Cf. Am. Chiropractic Ass'n*, 431 F.3d at 816 ("the Supreme Court has recognized an exception: if the claimant *can obtain judicial review* only in a federal question suit, § [405(h)] will not bar the suit") (emphasis added). A futile alternative does not justify the *Illinois Council* exception.

Because this case is not one of the cases falling within the scope of the *Illinois Council* exception, the broad bar of § 405(h) precludes review rooted in general federal question jurisdiction.

## IV. CONCLUSION

Plaintiffs' explanations about what, precisely, they are challenging have shifted throughout the course of this litigation. Plaintiffs began by challenging what they call CMS's "Payment Denial Policy," prohibiting Part B reimbursement for items originally billed under Part A, and seeking repayment for services previously provided. *See* Compl. ¶¶ 5, 9. After Plaintiffs

---

[10] The absence of final agency action is not jurisdictional. *See Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 661 (D.C. Cir. 2010) ("We think the proposition that the review provisions of the APA are not jurisdictional is now firmly established.").

15

filed their complaint, as described above, CMS issued both an interim ruling and a proposed rule with respect to rebilling of such claims. Accordingly, Plaintiffs amended their complaint, and it appeared that they were challenging (1) CMS's projected refusal to allow Plaintiffs to amend their previous Part A claims and projected application of a one-year filing limit to new Part B claims; (2) the interim ruling, 1455-R; and (3) the proposed new rule. *See* Second Am. Compl. ¶¶ 7–13. Defendant responded, among other arguments in her Motion to Dismiss, that the Court does not have jurisdiction to review discretionary claims processing decisions with respect to specific Part A and Part B claims. Def.'s Mot. at 24. Plaintiffs contested Defendant's construction of their complaint, arguing that they are "challenging a systemwide CMS policy of general applicability." Pls.' Opp'n at 30. But at the same time, Plaintiffs explained that they are challenging CMS's refusal to allow Plaintiffs to adjust or supplement particular previously submitted Part A claims. *See id*. at 33.

Meanwhile, CMS issued a final rule, superseding both the interim ruling and the proposed rule. Even after the issuance of the final rule, Plaintiffs appeared to ground their challenge in Ruling 1455-R. *See* Pls.' Supp. at 8 n.2 ("Plaintiffs are challenging a policy of general applicability adopted just this March."). But, in response to the Court's request for clarification in light of those events, Plaintiffs explained that they are challenging "a policy that has been in place since before Ruling 1455-R and remains in place after the Final Rule." Pls.' Second Supp. at 4. The parties agree that 1455-R does not apply to the claims in question. *See id*. at 1; Def.'s Mot. at 12. Ultimately, the Court considered the Plaintiffs' challenge as they have reframed it, in light of intervening events, challenging a general policy neither promulgated in

16

CMS's recent rulemaking nor in the now-superseded interim ruling, 1455-R. The Court has no jurisdiction over this challenge.[11]

For the foregoing reasons, Defendant's [31] Motion to Dismiss for Lack of Subject Matter Jurisdiction is GRANTED. Count VI has been dismissed voluntarily by Plaintiffs. All other counts are dismissed for lack of subject matter jurisdiction. The Court does not reach the argument that the complaint fails to state a claim upon which relief can be granted. Accordingly, this action is DISMISSED in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Dated: September 17, 2014

                                                     /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge

---

[11] As explained above, even if understood as a challenge to specific claims processing decisions, notwithstanding Plaintiffs' protestations to the contrary, Plaintiffs would have similarly little jurisdictional ground to stand on.